IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| MOHAMMAD OSMANZADA and TOBA TASLEEM, <br>                               *Plaintiffs,* <br> v. <br> ELDRIDGE CONCRETE CONSTRUCTION, INC., UNION INSURANCE COMPANY, SOLEDAD DURAN, STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, and GOVERNMENT EMPLOYEES INSURANCE COMPANY. <br>                               *Defendants.* | CIVIL ACTION NO. 3:10-cv-1 <br><br> MEMORANDUM OPINION <br><br> JUDGE NORMAN K. MOON |

This is a declaratory judgment action brought by plaintiffs Mohammad Osmanzada ("Osmanzada") and Toba Tasleem ("Tasleem") to determine their rights among defendants Eldridge Concrete Construction, Inc. ("Eldridge Concrete"); Soledad Duran ("Duran"); State Farm Mutual Automobile Insurance Company ("State Farm"); and the Government Employees Insurance Company ("GEICO"). Plaintiffs assert that Duran was covered under a motor vehicle liability insurance policy that Union issued to Eldridge Concrete. Now pending before the court is a motion for summary judgment filed by Eldridge Concrete and Union (docket no. 33). State Farm and the plaintiffs have filed briefs in opposition. (docket nos. 37 and 38). For the reasons set forth below, the motion for summary judgment will be GRANTED in part and DENIED in part. Plaintiffs will be permitted to proceed to trial on the issue of whether Duran had lawful possession of the vehicle at the time of the accident.

1

# I.

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In order to preclude summary judgment, the dispute about a material fact must be "'genuine,' that is . . . the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also JKC Holding Co. v. Wash. Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001). However, if the evidence of a genuine issue of material fact "is merely colorable or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 250. "As to materiality . . . [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* at 248.

Once a motion for summary judgment is properly made and supported, the non-moving party may not rely merely on allegations or denials in its own pleading, rather it must set out "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). When considering summary judgment motions, "the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

Plaintiffs were involved in a motor vehicle accident with Duran in Albemarle County, Virginia on or about July 26, 2008. At the time of the accident, Tasleem and Osmanzada were in Osmanzada's vehicle, which was traveling south on U.S. Route 29, near Charlottesville, Virginia. The vehicle collided with a Ford Taurus, which was driven by Duran, and owned by Eldridge Concrete (the "Taurus"). Prior to the accident, Duran had been drinking at a bar.

Eldridge Concrete is a construction company based in North Carolina. Prior to and in July 2008, the company had a written vehicle use policy, which proscribed the "personal use [of company vehicles] unless specifically authorized, in writing, by a supervisor or another company person having authority to authorize each use." The policy also provided that in cases where personal use is authorized, "only the employee will drive the vehicle." Company president Tim Eldridge ("Eldridge") testified that the policy was distributed to all employees, who were instructed to read it when they were hired. Eldridge further stated that in "early" 2007, the company distributed a memorandum with each employee's paycheck that admonished, "[c]ompany vehicles should be driven by approved employees that are listed on the automobile insurance policy. No one other than the approved employees are to drive any vehicle for any reason." There is no dispute that authorization to drive a company vehicle required Eldridge's approval as president of the corporation.

Eldridge and Duran had not met or interacted in any respect prior to the accident, and Duran was not an Eldridge Concrete employee. However, Duran would accompany her boyfriend, Hector Rodriguez Tapia ("Rodriguez Tapia"), a crew supervisor for the company, when he was working at job sites far from company headquarters. The weekend of the accident, she and Rodriguez Tapia's crew were staying in a hotel in Charlottesville, near their job site in Ruckersville, Virginia. On this occasion, as on others when Rodriguez Tapia left a job site for the weekend, he left her the keys to a car. Duran knew that Rodriguez Tapia had the authority to hire and fire members of the crew. She observed that everybody on the crew had access to the company vehicles, and the crew would frequently take the vehicles out to bars. She reasoned that Rodriguez Tapia "was the supervisor, so he was the one allowing me to drive the car, like everybody else."

3

## II.

As there is complete diversity among the parties, and the amount in controversy exceeds $75,000, the court has jurisdiction pursuant to 28 U.S.C. § 1332. A court sitting in diversity must apply the choice of law rules of the forum state, which in this case is Virginia. *CACI Int'l, Inc. v. St. Paul Fire and Marine Ins. Co.*, 566 F.3d 150, 154 (4th Cir. 2009). Under Virginia law, questions concerning contract interpretation are resolved according to the law of the state where the contract was made. *Seabulk Offshore Ltd. v. Am. Home Assurance Co.*, 377 F.3d 408, 419 (4th Cir. 2004) (citing *Woodson v. Celina Mut. Ins. Co.*, 177 S.E.2d 610, 613 (Va. 1970)). In the insurance context, this is generally considered to be the place where the policy was delivered. *Id.* As the policy in this case was delivered to Eldridge Concrete at its principle place of business in North Carolina, North Carolina law governs interpretation of its terms.

Under North Carolina law, limited coverage for drivers in "lawful possession" of a vehicle must be "written into every motor vehicle liability policy as a matter of law." *North Carolina Farm Bureau Mut. Ins. Co. v. Simpson*, 678 S.E.2d 753, 755 (N.C. Ct. App. 2009).[1] In this case, the policy also expressly extends coverage to drivers operating a covered auto, such as the Taurus, with the permission of the named insured, Eldridge Concrete. "The permission which puts the omnibus or extended coverage clause of the policy into operation may be either express or implied." *Hooper v. Maryland Cas. Co.*, 63 S.E.2d 128, 131 (Va. 1951). Accordingly, there are three theories under which Duran might be covered under the policy issued to Eldridge Concrete: express permission, implied permission, and lawful possession.

---

[1] Coverage mandated by N.C. GEN. STAT. § 20-279.21(b) is limited to indemnity coverage in the amount of $30,000 per injury/$60,000 per accident. N.C. GEN. STAT. § 20-279.21(b)(2). Coverage in excess of that amount is voluntary and not controlled by the Financial Responsibility Act. N.C. GEN. STAT. § 20-279.21(g).

**A.**

A party seeking to recover under a policy bears the burden of proving that use of the vehicle was within the scope of permission. *Wilson v. Hartford Acc. & Indem. Co.*, 158 S.E.2d 1, 7 (1967). Generally, "a person, driving only with the permission of a permittee, is not considered as using the automobile with either the express or implied permission of the owner . . . ." *Nationwide Mut. Ins. Co v. Chantos*, 214 S.E.2d 438, 442 (N.C. Ct. App. 1975). As the parties have agreed that only Tim Eldridge could authorize a driver to use company vehicles on behalf of the corporation, permissive use required his express or implied consent.

It is apparent that Duran did not have express permission to drive the Taurus on the night of the accident. "Where express permission is relied upon it must be of an affirmative character, directly and distinctly stated, clear and outspoken, and not merely implied or left to inference." *Bailey v. Gen. Ins. Co. of Am.*, 144 S.E. 2d 898, 900 (N.C. 1965). As both Eldridge and Duran testified that each had never seen or otherwise interacted with the other prior to the accident, there is no basis for a fact finder to conclude that Eldridge affirmatively, directly, and clearly told Duran that she could drive the Taurus. *See id.*

Nor is there any evidence from which a rational fact finder could conclude that Duran had implied permission. "Implied permission involves an inference arising from a course of conduct or relationship between the parties, in which there is mutual acquiescence or lack of objection under circumstances signifying assent." *Id.* (quotations omitted). "[T]he relationship between the owner and the user, such as kinship, social ties, and the purpose of the use," may have bearing on the court's determination. *Id.* However, "proof of friendly relations, which might otherwise imply permission, cannot overcome the effect of a limitation as to time, purpose or locality expressly imposed by the owner upon the bailee at the time of the delivery of the

automobile to the bailee . . . ." *Wilson*, 158 S.E.2d at 7. Nonetheless, implied permission may be found "where the named insured has knowledge of a violation of instructions and fails to make a significant protest." *Nationwide Mut. Ins. Co. v. Land*, 350 S.E.2d 500, 506-07 (N.C. 1986)). Such knowledge may be actual or constructive. *See Ins. Co. of North Am. v. Aetna Life and Cas. Co.*, 362 S.E.2d 836, 839 (N.C. Ct. App. 1987).

There is scant evidence of any "course of conduct" or "relationship" between Eldridge and Duran whatsoever, let alone enough to show that Duran had implied permission. Furthermore, a showing that the owner never met the driver is generally fatal to an implied permission claim. *See Int'l Serv. Ins. Co. v. Iowa Nat'l Mut. Ins. Co.*, 172 S.E.2d 55, 61 (N.C. 1970); *Ins. Co. of North Am.*, 362 S.E.2d at 839; s*ee also Bailey*, 144 S.E.2d at 899 (finding no implied permission where named insured had seen the driver on one occasion, months prior to the accident, and had no knowledge of the driver's operation of the vehicle). Contrary to plaintiffs' contention, this case is easily distinguishable from *Aetna Casualty and Surety Company v. Younts*, 352 S.E.2d 850 (N.C. Ct. App. 1987). There, a company entrusted a vehicle to its employee for the limited purpose of driving "back and forth to work." *Id.* at 850. Nonetheless, the Court of Appeals determined that the employee's daughter was in lawful possession of the vehicle, because the employee had explicitly informed the employer of his daughter's use, and the employer took no remedial action. *Id.* at 852-54. Here, however, there is no evidence that Eldridge was even aware of Duran's existence.

Plaintiffs contend that constructive knowledge of Duran's use of company vehicles should be imputed to Eldridge. As Duran followed Rodriguez Tapia to various job sites, and Eldridge visited the Ruckersville site on a weekly basis, plaintiffs posit that Duran's presence gave rise to an "obligation to inquire as to who that woman was and what she was doing at his

6

jobsites." However, I am unaware of any legal basis for the asserted duty to inquire, and at most the above lends support to the conclusion that Eldridge should have known who Duran was. Furthermore, while there is some basis for concluding that the vehicle use policy was widely ignored,[2] there is no evidence to contravene Eldridge's testimony that he never witnessed any violations. But even assuming that Eldridge should have known that his *employees* were using company vehicles, this would be insufficient to show that *Duran* had implied permission. *See Ins. Co. of North Am.* 362 S.E.2d at 839 (rejecting implied permission claim where the owner knew that its permittee had lent vehicles to third parties, but had no knowledge of the specific driver in question). Duran's prior use of company vehicles was limited to three occasions,[3] and there is no evidence that Eldridge was present for any of them.

In light of the foregoing, Eldridge Concrete and Union are entitled to summary judgment on the permissive use claims.

**B.**

Prior to 1967, the Financial Responsibility Act, N.C. GEN. STAT. § 20-279.21, required motor vehicle liability insurance policies to extend coverage to the named insured and persons operating a vehicle "with the express or implied permission of such named insured." *See Iowa Nat'l Mut. Ins. Co. v. Broughton*, 196 S.E. 2d 243, 246 (N.C. 1973). Then, the General Assembly amended the statute, appending the words "or any *other persons* in lawful possession" of a vehicle. *Id.* at 247 (emphasis added). It follows that "permission, express or implied, is not

---

[2] Eldridge Concrete and Union have acknowledged that some personal use of company vehicles, such as driving to the grocery store and to the laundromat, was permitted while crews were on jobs far from home. There is further evidence that personal use of company vehicles was more widespread than Eldridge Concrete and Union acknowledge. Duran testified that Rodriguez Tapia let "everyone" use company vehicles, and that if there was a vehicle use policy, "everybody" flouted it regularly. Crew members would go to bars after hours "all the time", and whoever drank least would drive home.

[3] She had driven the Taurus on one occasion, and a company truck on two occasions. When asked whether "there [were] other times that you drove either one of the Eldridge Concrete vehicles," she responded, "No, because I also drive [Rodriguez Tapia's] vehicle, his car."

7

an essential element of lawful possession." *Caison v. Nationwide Ins. Co.*, 243 S.E.2d 429, 432 (N.C. Ct. App. 1978).[4] Thus, lawful possession is evaluated not under a rubric of permission, but good faith. *See Belasco v. Nationwide Mut. Ins. Co.*, 326 S.E.2d 109, 113 (N.C. Ct. App.) *discretionary review denied*, 332 S.E.2d 177 (N.C. 1985).

The parties dispute whether it is sufficient for plaintiffs to show only that Duran acted in good faith, or whether they must also show that Rodriguez Tapia acted in good faith. In *Belasco*, the owner lent a vehicle to his daughter and expressly instructed her not to allow anybody else to drive. In violation of this instruction, the daughter gave the car to a third party, who got into an accident. The Court of Appeals held that "a person is in lawful possession of a vehicle ... if he is given possession of the automobile by the automobile's owner or owner's permittee under a good faith belief that giving possession of the vehicle to the third party would not be in violation of any law or contractual obligation." 326 S.E.2d at 113. As the third party was unaware of the owner's restriction on the daughter, he was deemed to have been in lawful possession of the vehicle. Similarly, in *Insurance Company of North America*, a permittee lent a rental car to an unlicensed driver in violation of the terms of his rental agreement. 362 S.E.2d at 840. The court nonetheless concluded that the unlicensed driver was in lawful possession of the vehicle. *Id.*

Eldridge Concrete and Union aver that a more recent case, *Nationwide Mutual Insurance Company v. Baer*, 439 S.E.2d 202 (N.C. Ct. App. 1994), has supplanted the rule of *Belasco*. In

---

[4] There is language in *Broughton* suggesting that lawful possession requires either express or implied permission. *See* 196 S.E. 2d at 247. However, the Court of Appeals has brushed aside this language as *dicta*. *See Belasco v. Nationwide Mut. Ins. Co.,* 326 S.E.2d 109, 111 (N.C. Ct. App. 1985). Moreover, the Supreme Court has acknowledged that any such suggestion was flawed and "arguably runs counter to [§ 279.21's] purpose." *American Tours, Inc. v. Liberty Mut. Ins. Co.*, 338 S.E.2d 92, 96 (N.C.1986). The Supreme Court has also acquiesced in the development of contrary case law over several decades. See *Nationwide Mut. Ins. Co. v. Chantos*, 214 S.E.2d 438 (N.C. Ct. App.) *cert. denied*, 215 S.E.2d 624 (N.C. 1975); *Engle v. State Farm Mut. Ins. Co.*, 245 S.E.2d 532 (N.C. Ct. App.) *discretionary review denied*, 248 S.E.2d 250 (N.C. 1978); *Stanley v. Nationwide Mut. Ins. Co*., 321 S.E.2d 920 (N.C. Ct. App.) *discretionary review denied*, 326 S.E.2d 33 (N.C. 1985); *Belasco*, 326 S.E.2d at 113 (N.C. Ct. App.) *discretionary review denied*, 332 S.E.2d 177 (N.C. 1985). Finally, I note that none of the parties to this action have suggested that lawful possession requires either express or implied permission.

*Baer*, the owner allowed the permittee to drive his truck so that he could take a third party home. As the permittee knew, the owner had specifically instructed the third party not to drive. Nonetheless, the permittee allowed the third party to drive, and an accident resulted. Upon finding that the third party was not in lawful possession of the truck, the court wrote that lawful possession "implies not only that the owner or the owner's permittee must give possession to a third party in good faith, but also that the third party must take in good faith and without any restrictions on his use." 439 S.E.2d at 205. While a natural reading of this language would be to impose a good faith requirement on both the owner's permittee and the third party, it is apparent that the court intended a different rule. *Baer* holds that to be in lawful possession of a vehicle, a third party must have: (i) a good faith belief that the owner or owner's permittee had authority to give possession; and (ii) a good faith belief that there were otherwise no restrictions on his use.

This admittedly counterintuitive reading follows from the issue the court confronted in *Baer*. Relying on *Belasco*, the defendants had apparently argued that "to allow coverage when the first permittee violates the owner's instructions but not when the [third party] violates those same instructions is inconsistent which the intention of the Financial Responsibility Act." *Baer*, 439 S.E.2d at 205. The court disagreed, explaining:

> the third party [in *Belasco*] never received an express instruction that he did not have permission to use the owner's vehicle. Instead, the cases cited by defendants impose liability [on an owner through his insurance company] where the permittee violated the instruction of the owner. . . . The purpose of the Financial Responsibility Act has always been to protect innocent motorists from financially irresponsible motorists. However, in protecting innocent motorists it is not fair to impose liability on an owner, through his insurance company, when that owner has done everything in his power to limit those individuals who have permission to use his vehicle. *It is one thing to impose coverage when a permittee gives possession to a third party who is unaware of any restrictions, but it is an entirely different matter to impose coverage when the owner's permittee gives possession to a third party who knows that he is prohibited from using the vehicle.* Such a person cannot have lawful possession and the trial court was correct in so holding.

*Id.* (emphasis added and citation omitted). From the foregoing it is clear that *Belasco* remains good law. *Baer* turned on the owner's express instructions to the third party, not any limitation on the first permittee. Moreover, preserving lawful possession where the third party is unaware of any restrictions that might have applied to the first permittee is the most sensible way of serving the statutory goal of protecting innocent motorists.

Viewed in the light most favorable to the non-moving party, there is ample evidence for a fact finder to conclude that Duran had lawful possession of the Taurus. She testified that (i) she was aware that Rodriguez Tapia had the authority to hire and fire members of the crew, as well as perform other supervisory duties; (ii) members of the crew would use the vehicles with great regularity; (iii) Rodriguez Tapia had never instructed her not to use any company vehicles; (iv) Rodriguez Tapia had specifically told her that she could use the Taurus on the date of the accident;[5] and, (v) she "thought [Rodriguez Tapia] was the supervisor, so he was the one allowing me to drive the car, like everybody else."

Accordingly, Eldridge Concrete and Union are not entitled to summary judgment on the lawful possession claim.

### III.

As set forth above, the motion to dismiss will be GRANTED in part and DENIED in part.

The Clerk of the Court is directed to send a certified copy of this memorandum opinion and the accompanying order to all counsel of record.

Entered this 15th day of March, 2011.

NORMAN K. MOON
UNITED STATES DISTRICT JUDGE

---

[5] Union and Eldridge Concrete suggest that evidence of Rodriguez Tapia's statements is hearsay. However, legally operative words, or verbal acts, such as the words of permission in issue here, are not considered to fall within the definition of hearsay. 4 Christopher B. Mueller & Laird C. Kirkpatrick, Federal Evidence § 8:18 (3d ed. 2003).